**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **GERALD VINELLA,**<br><br>   **Plaintiff,**<br><br>   v.<br><br>**UNITED INSURANCE COMPANY OF AMERICA and KEMPER CORPORATION d/b/a KEMPER LIFE INSURANCE COMPANY,**<br><br>   **Defendants.** | **Civil Action No.: 23-0351 (ES) (MAH)**<br><br>**OPINION** |

**S**ALAS, **D**ISTRICT **J**UDGE

Plaintiff Gerald Vinella filed this action against United Insurance Company of America ("United") and Kemper Corporation d/b/a Kemper Life Insurance Company ("Kemper") (collectively, "Defendants") for alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et. seq.*; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et. seq.*; and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §§ 10:5-1 *et. seq.* (D.E. No. 1 ("Complaint" or "Compl.")). Before the Court is Defendants' motion to compel arbitration and dismiss or stay the action. (D.E. No. 9 ("Motion")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' Motion is **DENIED** *without prejudice* pending limited fact discovery on the issue of arbitrability.

## I.    BACKGROUND

### A.    Factual Allegations

On or about February 24, 2020, Defendants hired Plaintiff to work as a sales agent in Defendants' Clifton, New Jersey location.[1]  (Compl. ¶ 13).  During his time in that role, Plaintiff was supervised by multiple members of management, including Chief Executive Officer, Joe Lacher, and Regional Director, Pierre Kurzhauls.  (*Id.* ¶ 14).  In or about early 2020, Plaintiff was diagnosed with cancer requiring various forms of treatment and chemotherapy.  (*Id.* ¶¶ 16–18).  Initially, Plaintiff informed only Defendants' Human Resources Department that he had cancer because he was fearful that Defendants' management would treat him differently if they learned that he had cancer.  (*Id.* ¶ 19).

According to the Complaint, Plaintiff was able to perform the functions of his job well despite his cancer.  (*Id.* ¶ 20).  However, he at times required some reasonable accommodations to care for and treat his cancer.  (*Id.*).  For example, in or about June 2020, Plaintiff allegedly requested and was granted a medical leave of absence until in or about October 2020.  (*Id.* ¶ 21).  Upon returning to work, Plaintiff alleges that Mr. Kurzhauls, "showed clear frustration with his need for medical accommodations by repeatedly treating Plaintiff in a rude and condescending manner and subjecting him to blatantly discriminating comments."  (*Id.* ¶ 22).  According to the Complaint, around this time Mr. Kurzhauls began to issue Plaintiff pretextual write-ups to justify his discriminatory intent.  (*Id.* ¶ 28).

Plaintiff allegedly requested and was granted FMLA leave from in or about early August 2021 through late August 2021 to obtain further treatment.  (*Id.* ¶ 29).  According to Plaintiff,

---

[1]    In their moving brief, Defendants explain that Plaintiff was specifically employed by Defendant United. (Mov. Br. at 3 n.1).  They also note that Defendant Kemper is United's parent company.  (*Id.*).  In his Complaint, Plaintiff refers to his employment with Defendants collectively and notes that "[b]ecause of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they may be treated as a single and/or joint employer for purposes of the instant action."  (Compl. ¶ 10).  As such, for purposes of this Opinion, the Court will likewise refer to Plaintiff's employment with Defendants collectively.

while he was out on medical leave, Mr. Kurzhauls "repeatedly harassed Plaintiff with calls and text messages regarding his performance and job responsibilities even though he knew Plaintiff was utilizing FMLA." (*Id.* ¶ 30). After Plaintiff returned to work, Mr. Kurzhauls allegedly issued Plaintiff another pretextual write-up for purported client complaints and often commented on how he wanted to fire Plaintiff, without providing any justifiable reason for taking such a course of action. (*Id.* ¶¶ 32–33). Plaintiff alleges that less than two weeks after returning from FMLA leave, on or about September 13, 2021, Mr. Kurzhauls and Mr. Lacher met with Plaintiff and abruptly terminated his employment for purported poor performance. (*Id.* ¶ 34). Plaintiff claims that his termination was pretextual because: "[i] Plaintiff was one of Defendants' top sales performers; [ii] other non-disabled employees with Defendants did not perform their job functions nearly as well as Plaintiff but they were not disciplined or terminated in a similar fashion to how Plaintiff was; [iii] Plaintiff only started to be subjected to pretextual write-ups after disclosing his disabilities and requesting accommodations in the form of medical leave; and [iv] Plaintiff was terminated only approximately two weeks after returning from FMLA medical leave." (*Id.* ¶ 35).

### B.    Procedural History

Plaintiff initiated this action on January 23, 2023, alleging three causes of action against Defendants for violations of the (i) ADA (Count I), (ii) FMLA (Count II), and (iii) NJLAD (Count III). (*Id.* ¶¶ 37–55). On March 10, 2023, Defendants filed a motion to compel Plaintiff to arbitrate his claims and to dismiss or stay the action. (D.E. No. 9-1 ("Mov. Br.")). The Motion is fully briefed. (D.E. No. 18 ("Opp. Br."); D.E. No. 20 ("Reply")).

## II.    LEGAL STANDARD

The Federal Arbitration Act (the "FAA") "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560

F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)).  "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement."  *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009).  A court is required to order that the parties proceed with arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue."  9 U.S.C. § 4.  By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so."  *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999).  The "presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'"  *Kirleis*, 560 F.3d at 160 (quoting *Fleetwood Enters. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)).  "When the very existence of . . . an [arbitration] agreement is disputed, a district court is correct to refuse to compel arbitration until it resolves the threshold question of whether the arbitration agreement exists."  *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 775 n.5 (3d Cir. 2013) (quoting *Sandvik AB v. Advent Int'l Corp.,* 220 F.3d 99, 112 (3d Cir.2000)).  Nevertheless, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## III.   DISCUSSION

In their moving brief, Defendants assert that on February 27, 2020, Plaintiff electronically signed and agreed to be bound by an arbitration agreement ("Arbitration Agreement") as a term and condition of his employment with Defendants.  (Mov. Br. at 3 (citing D.E. No. 9-3 ("Pfister Decl.") ¶ 5)).  More specifically, Defendants contend that during his onboarding process, Plaintiff, like all new employees, received the Arbitration Agreement through United's Human Resources

system, called Workday, which he was required to review and sign.  (*Id.* (citing Pfister Decl. ¶ 5)).

To complete the onboarding process, Defendants explain that Plaintiff was required to use his

unique username and password to open the arbitration program and was then required to view each

section of the Arbitration Agreement before moving on to the next section of the program.  (*Id.*

(citing Pfister Decl. ¶ 7)).  Defendants assert that after being provided with a downloadable copy

of the Arbitration Agreement, Plaintiff was asked to affirmatively acknowledge that he agreed to

be bound by the Arbitration Agreement by typing "I agree" to a prompt which read, "I have read

and agree to abide by this arbitration agreement.  I also agree to use an electronic acknowledgment

to demonstrate my agreement."  (*Id.* at 3–4 (citing Pfister Decl. ¶¶ 8–10)).  According to

Defendants, Plaintiff electronically agreed to the Arbitration Agreement by typing "I agree" on

February 27, 2020 at 2:31:41 p.m.  (*Id.* at 4 (citing Pfister Decl. ¶ 11); *see also* Ex. C. to Pfister

Decl.).

According to Defendants, the Arbitration Agreement Plaintiff signed and acknowledged

contains a clause that covers "any dispute, past, present, or future, arising out of or related to

Employee's application for employment, employment or other relationship, and/or termination of

employment with the Company."[2]  (Mov. Br. at 4 (citing Pfister Decl. ¶ 5 & Ex. A to Pfister Decl.

¶ 1)).  They note that the Arbitration Agreement also covers "disputes the Company has against

Employee, and disputes Employee has against the Company or any of its officers, directors,

employees, or agents, and successors and assigns of any of them (all of whom or which may

enforce this Agreement)."  (*Id.* (citing Pfister Decl. ¶ 5 & Ex. A to Pfister Decl. ¶ 1)).  Further,

Defendants point out that the Arbitration Agreement specifically covers claims arising out of:

> [T]he employment relationship or termination of that relationship .
> . . retaliation, discrimination or harassment and claims arising under

---

[2]       Defendants point out that the Arbitration Agreement defines "Company" to include both United and Kemper.
(Mov Br. at 3 n.1 (citing Ex. A. to Pfister Decl. ¶ 1)).

> the . . . Americans With Disabilities Act, [ ], Family Medical Leave
> Act . . . and state statutes, if any, addressing the same or similar
> subject matters, and all other state statutory and common law claims
> . . . [as well as] all other federal, state, or local legal claims
> (including without limitation torts) arising out of or relating to
> [Plaintiff's] employment or the termination of employment.

(*Id.* (citing Pfister Decl. ¶ 5 & Ex. A to Pfister Decl. ¶ 1)).  Defendants argue that the Court should

dismiss or stay this case because the Arbitration Agreement prohibits Plaintiff from pursuing his

claims in Court.  (*Id.* at 2 & 18–19).  Plaintiff opposes the motion on several grounds.  (*See

generally* Opp. Br.).  Among other things, Plaintiff contends that because Defendants' Motion

cannot be resolved without consideration of evidence outside the pleadings, the Court should allow

Plaintiff to take limited discovery on the issue of arbitrability before resolving the Motion.  (*Id.* at

14–16).  In Reply, Defendants assert that limited discovery on the issue of arbitrability is

unwarranted in this case because Plaintiff has not come forward with any evidence to put the

validity or enforceability of the Arbitration Agreement at issue.  (Reply at 5).  As explained below,

because the affirmative defense of arbitrability is not apparent on the face of the Complaint or

documents integral to or relied upon therein, the Court finds that Defendants' Motion must be

denied pending limited discovery on the issue of arbitrability.

When a Court is asked to decide whether a valid arbitration agreement exists, it must first

determine whether to use the Rule 12(b)(6) or Rule 56 standard of review.  *See Guidotti*, 716 F.3d

at 776.  "[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in

the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a

motion to compel arbitration should be considered under a Rule 12(b)(6) standard without

discovery's delay.'"  *Id.* (quoting *Somerset Consulting, LLC v. United Cap. Leaders, LLC*, 832 F.

Supp. 2d 474, 482 (E.D. Pa. 2011)).  Further, even where an agreement to arbitrate is not explicitly

mentioned on the face of the complaint and is not attached as an exhibit to the complaint, a court

may properly consider the agreement under Rule 12(b)(6) if it is integral to or explicitly relied upon in the complaint or has been incorporated by reference into the complaint based on a plaintiff's allegations. *See e.g., CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014); *George v. Midland Funding, LLC*, No. 18-15830, 2019 WL 2591163, at *3 (D.N.J. June 25, 2019); *Stacy v. Tata Consultancy Servs., Ltd.*, No. 18-13243, 2019 WL 1233081, at *5 (D.N.J. Mar. 14, 2019).   For example, some courts in this Circuit have found an arbitration agreement to be incorporated by reference in a complaint where the underlying claims are based on agreements that contain the disputed arbitration provisions or where the complaint references an agreement that contains the arbitration provision. *See CardioNet, Inc.*, 751 F.3d at 168 n.2.; *George*, 2019 WL 2591163, at *3.

The Third Circuit has provided that it is inappropriate to consider a motion to compel arbitration under a Rule 12(b)(6) standard in two instances: (i) if "the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or" (ii) "if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." *Guidotti*, 716 F.3d at 776.   Under either scenario, "the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." *Id.* at 774. (internal quotation and citation omitted).   "After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id.* at 776; *see Discovery House v. Advanced Data Sys. RCM, Inc.*, No. 19-21602, 2020 WL 6938353, at *4 (D.N.J. Nov. 25, 2020).

Pursuant to *Guidotti*, the Court cannot decide Defendants' Motion on a Rule 12(b)(6) standard and without discovery because the Complaint lacks the requisite clarity to establish that the parties agreed to arbitrate Plaintiff's claims.   To start, Plaintiff's Complaint makes no explicit

reference to the Arbitration Agreement.  Nor is the Arbitration Agreement attached to the Complaint as an exhibit.  (*See generally* Compl.).  Rather, the Arbitration Agreement was filed for the first time in connection with Defendants' Motion.  (*See* Ex. A to Pfister Decl.).  Further, the Arbitration Agreement is not integral to or relied upon in the Complaint nor is it incorporated by reference in the Complaint.  Plaintiff's claims do not arise under the Arbitration Agreement.  Nor do Plaintiff's allegations "turn on the 'terms and conditions' of" an agreement "that [] contains the subject arbitration provision."  *See George*, 2019 WL 2591163, at *3.  Rather, Plaintiff's claims stem from Defendants' alleged discrimination and retaliation in violation of the ADA, FMLA, and NJLAD.  (Compl. ¶¶ 37–55); *see Hubbard v. Comcast Corp.*, No. 18-16090, 2019 WL 2866067, at *2 (D.N.J. July 3, 2019) (declining to apply Rule 12(b)(6) where the complaint neither referenced the arbitration agreement nor attached it as an exhibit to the complaint and finding that plaintiffs' NJLAD claim did not stem from the existence of an arbitration agreement).  In addition, the Complaint never mentions, much less discusses any documents that contain or incorporate the Arbitration Agreement.  (*See generally* Compl.).  In fact, Defendants describe the Arbitration Agreement as a "standalone" document.  (Reply at 9).  And Defendants do not otherwise argue that the Arbitration Agreement is integral to or relied upon in the Complaint.  (*See generally* Mov. Br. & Reply).  Thus, "[u]nder *Guidotti*'s first pathway, . . . the affirmative defense of arbitrability . . . is [*not*] apparent on the face of [the] [c]omplaint, making application of Rule 12(b)(6) inappropriate in this case."  *See Horton v. FedChoice Fed. Credit Union*, 688 F. App'x 153, 157 (3d Cir. 2017) (internal quotations omitted) (emphasis added).  Therefore, evaluating the motion under Rule 56, rather than 12(b)(6), is proper.  *See Guidotti*, 716 F.3d at 776.

Since *Guidotti*, courts within this District routinely deny motions to compel arbitration and allow limited discovery on the narrow issue of whether an arbitration agreement exists where the

8

complaint makes no reference to whether the parties agreed to arbitration and the asserted claims do not arise under the parties' arbitration agreement. *See, e.g.*, *Divoc 91, LLC v. Nat. Essentials, Inc.*, No. 22-0249, 2023 WL 2625275, at *3 (D.N.J. Mar. 24, 2023) (denying motion to compel arbitration and ordering limited discovery because the plaintiff's complaint "ma[de] no reference to whether the parties *agreed* to arbitration") (emphasis in original); *Torres v. Rushmore Serv. Ctr., LLC*, No. 18-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018) (denying motion to compel arbitration and ordering limited discovery where the agreement, arbitration provision, and class action waiver were not referenced in the complaint and were raised for the first time in the defendant's motion); *Sauberman v. Avis Rent a Car Sys., L.L.C.*, No. 17-0756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) (denying motion to compel arbitration and ordering limited discovery where the complaint made no reference to arbitration agreement); *Ackies v. Scopely, Inc.*, No. 19-19247, 2020 WL 5757988, at *4 (D.N.J. Sept. 28, 2020) (same); *Aiello on behalf of Landers v. AHC Florham Park LLC*, No. 20-7169, 2021 WL 118931, at *2–3 (D.N.J. Jan. 13, 2021) (same); *Hubbard*, 2019 WL 2866067, at *2, n.1 (same); *Nicasio v. Law Offs. of Faloni & Assocs., LLC*, No. 16-0474, 2016 WL 7105928, at *2 (D.N.J. Dec. 5, 2016) (same).  The Third Circuit has explained that discovery is necessary under such a scenario because "[w]ithout the benefit of a developed factual record," a court cannot assess whether the authenticity or import of the arbitration agreement at issue "are factual matters beyond reasonable dispute."  *Horton*, 688 F. App'x at 157.  At this stage, the Court need not reach step two of the *Guidotti* inquiry, namely whether Plaintiff has put forth credible evidence that he is not bound by the Arbitration Agreement. *See Guidotti*, 716 F.3d at 774 ("The second scenario will come into play when the complaint and incorporated documents facially establish arbitrability but the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue.").

Rather, because the issue of arbitrability requires this Court to examine documents extraneous to the pleadings that were attached to Defendants' motion to compel arbitration, the Rule 56 standard should apply and limited discovery is appropriate on the narrow issue of whether an arbitration agreement exists before the Court can resolve Defendants' Motion under Rule 56.  *See, e.g.*, *Guidotti*, 716 F.3d at 776; *Horton*, 688 F. App'x at 157; *Nicasio*, 2016 WL 7105928, at *2.  After the necessary discovery is complete, Defendants may submit arbitrability arguments in a motion for summary judgment pursuant to Rule 56.

Defendants' remaining arguments to the contrary are unavailing.  To start, Defendants contend that "[w]hen a party brings a well-supported motion to compel arbitration, the district court should only authorize discovery and defer ruling on the motion where the nonmoving party unequivocally and competently denies entering into the arbitration agreement and submits admissible evidence sufficient to place the agreement in issue."  (Reply at 4).  And because Plaintiff has not done so here, Defendants argue that limited discovery is unwarranted in the present case.  (*Id.*).  The Court disagrees.  Defendants' argument overlooks the fact that "*Guidotti*'s rule-selecting framework is disjunctive."  *Horton*, 688 F. App'x at 157.  More specifically, the Third Circuit in *Guidotti* provided that considering a motion to compel arbitration under Rule 12(b)(6) is inappropriate "[i] if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, *or* [ii] if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue . . ."  *Guidotti*, 716 F.3d at 776 (emphasis added).  If *either* scenario applies, *Guidotti* is unequivocal: "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question."  *Id.* at 776.  Accordingly, the fact that Plaintiff did not unequivocally and competently deny entering into the Arbitration Agreement and did not submit admissible evidence

sufficient to place the agreement in issue is of no moment in this case. Rather, because arbitrability is not apparent on the face of Plaintiff's Complaint, Defendants' motion to compel arbitration must be denied pending further development of the factual record. *Horton*, 688 F. App'x at 157.

Further, Defendants contend that because Plaintiff has not come forward with any factual evidence to put the validity or enforceability of the Arbitration Agreement into issue, discovery would serve no legitimate purpose and would only prolong the proceedings. (Reply at 5–6). This argument, however, "puts the cart before the horse." *See Hubbard*, 2019 WL 2866067, at \*2. As explained above, because arbitrability is not apparent on the face of Plaintiff's Complaint, *Guidotti* affords Plaintiff a limited opportunity to develop the record to support his theories of arbitrability. *See Guidotti*, 716 F.3d at 774 ("Under the first scenario, arbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record.").[3] After the necessary discovery is complete, Defendants may

---

[3] Defendants contend that the fact that Plaintiff does not mention the Arbitration Agreement in the Complaint does not automatically require application of Rule 56 or require discovery. (Reply at 5–6 & n.1). They cite to five cases within this Circuit to support their assertion. *See Joaquin v. Directv Grp. Holdings, Inc.*, No. 15-8194, 2016 WL 4547150, at \*3 (D.N.J. Aug. 30, 2016); *Matthews v. Gucci*, 21-0434, 2022 WL 462406, at \*4–7 (E.D. Pa. Feb. 15, 2022); *Benedict v. Guess, Inc.*, 20-4545, 2021 WL 37619, at \*4–6 (E.D. Pa. Jan. 5, 2021); *Asberry-Jones v. Wells Fargo Bank, Nat'l Ass'n*, No. 19-0083, 2019 WL 2077731, at \*3 (E.D. Pa. May 10, 2019); *Sorathia v. Fidato Partners, LLC*, 483 F. Supp. 3d 266, 272 (E.D. Pa. 2020). This case law does not compel the Court to reach a contrary conclusion. It is true that in these cases, the courts applied the Rule 12(b)(6) standard without affording the plaintiff the opportunity to conduct limited discovery on the issue of arbitrability even where arbitrability was not apparent on the face of the complaint because the plaintiff did not come forward with any factual evidence to put the arbitration agreement in question. However, that approach is inconsistent with *Guidotti*'s disjunctive rule selecting framework, described above, which provides that limited discovery is also appropriate when arbitrability is not apparent on the face of a plaintiff's complaint. Accordingly, the Court finds that these cases are unpersuasive, and will instead follow the binding Third Circuit decision in *Guidotti* and the approach taken by most of the courts in this District, which routinely deny motions to compel arbitration and allow limited discovery on the narrow issue of whether an arbitration agreement exists where the complaint makes no reference to whether the parties agreed to arbitration and the asserted claims do not arise under the parties' arbitration agreement. *See, e.g.*, *Horton*, 688 F. App'x at 157; *Ackies*, 2020 WL 5757988, at \*4; *Aiello*, 2021 WL 118931, at \*2–3; *Hubbard*, 2019 WL 2866067, at \*2, n.1; *Torres*, 2018 WL 5669175, at \*2; *Sauberman*, 2017 WL 2312359, at \*2; *Nicasio*, 2016 WL 7105928, at \*2.

submit arbitrability arguments in a motion for summary judgment pursuant to Rule 56 and the appropriate Local Civil Rules.[4]

IV.     **CONCLUSION**

For the reasons stated above, Defendants' Motion is **DENIED,** *without prejudice* to their ability to renew their arbitrability arguments in a motion for summary judgment pursuant to Rule 56, pending limited fact discovery on the issue of arbitrability.  Defendants may file a renewed motion to compel arbitration under Rule 56 within thirty days of the close of discovery.  An appropriate Order follows.

**Dated:** December 27, 2023                                  *s/ Esther Salas*
                                                                              **Esther Salas, U.S.D.J.**

---

[4]       In Opposition, Plaintiff also argues that Defendants' Motion should be denied because the Arbitration Agreement is unenforceable and substantively unconscionable.  (Opp. Br. at 7–14).  In Reply, Defendants contend that the Arbitration Agreement contains a delegation provision which expressly states that disputes as to the validity and enforceability of the Arbitration Agreement are covered disputes to be decided by the arbitrator.  (Reply at 2–4). The Court need not address these arguments.  Because arbitrability is not apparent on the face of Plaintiff's Complaint, the Court cannot decide Defendants' Motion without discovery that deals with the threshold question of whether the parties formed an agreement to arbitrate.